**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **ANTOINE WAINWRIGHT, #N20490,** | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | **Case No. 17−cv–1055−SMY** |
| **DR. JOHN TROST, LISA ARNOLD, DR. FLEMING, DR. MOLDENHAUER, and DEBBIE KNAUER,** | ) | |
| **Defendants.** | ) | |

**<u>MEMORANDUM AND ORDER</u>**

**YANDLE, District Judge:**

Plaintiff Antoine Wainwright, an inmate in Hill Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights that allegedly occurred at Menard Correctional Center ("Menard"), among other places. In his Complaint, Plaintiff claims the defendants have been deliberately indifferent to his serious medical issues in violation of the Eighth Amendment. (Doc. 1). This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune

from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to allow this case to proceed past the threshold stage.

**The Complaint**

Plaintiff makes the following allegations in his Complaint (Doc. 1): Since 2000, Plaintiff has been seeing Dr. Herbert Engelhard, a neurosurgeon at the UIC Hospital in Chicago, regarding his medication condition. (Doc. 1, p. 7). In August 2000, Plaintiff had an L5-51 discectomy performed by Dr. Engelhard. *Id.* In 2007, Plaintiff had an L5-51 hemilaminectomy discectomy performed by Dr. Engelhard. *Id.* In 2008, Plaintiff had an L3-L5 laminectomy performed by Dr. Engelhard. *Id.* Dr. Engelhard "has been treating the Plaintiff for over 20 years and has the knowledge and understanding of Plaintiff's medical condition and treatments." *Id.*

On May 6, 2016, Plaintiff received an Epidural Steroid Injection ("ESI") from the UIC hospital with a follow up at the pain clinic. (Doc. 1, pp. 7-8). On July 11, 2016, Plaintiff returned to the pain clinic for a consultation and spoke with Dr. Ashley Barks and Dr. Konstantin

Slavin regarding his cervical spine and lower back pain. (Doc. 1, p. 8). He told them that the epidural steroid injections help his back pain, but that they only last for a few weeks and when they wear off, the pain is more severe than before. *Id.* Dr. Barks recommended that Plaintiff continue with his current conservative management strategies for his pain, and if for some reason his pain progresses and he no longer responds to the steroid injections, "they would be happy to see him back in the clinic and they [could] discuss his surgical options further at that time." *Id.* Barks also noted that Plaintiff had been seen by Engelhard at the UIC multiple times and had multiple surgeries performed by him. He recommended that Plaintiff follow up with Engelhard for further evaluation of possible surgical decompression of his cervical spine. *Id.*

On November 11, 2016, Plaintiff's medical hold was lifted at Stateville Correctional Center without regard to his medical needs and the pending appointment he had at the UIC. *Id.* Plaintiff was then transferred to Menard Correctional Center. *Id.* Since he has been in Menard, Plaintiff has been denied epidural steroid injections and any kind of medical treatment for his back and cervical spine. *Id.*

On November 30, 2016, Plaintiff was taken to Belleville Hospital for a CT scan of his cervical spine. *Id.* On December 15, 2016, he was taken to the UIC Hospital in Chicago for a consultation with Dr. Engelhard regarding his cervical spine and back pain. *Id.* Plaintiff told Dr. Engelhard that he had not had a cervical spine injection since May 6, 2016, that he was experiencing severe pain laying down and moving around and that he had numbness moving down his left arm from his neck pain. *Id.* No paperwork or records were sent from Menard regarding Plaintiff's November 30, 2016 CT scan or his cervical spine. *Id.* Engelhard ordered an MRI on the Plaintiff's back and cervical spine and directed Plaintiff to return for a follow up consultation with him. *Id.*

On January 11, 2017, Plaintiff was returned to Menard from Stateville. *Id.* Plaintiff was taken to Memorial Hospital in Carbondale for an MRI on February 13, 2017. *Id.* On March 2, 2017, he was taken to the Brain and Spine Institute of Carbondale for a consultation. (Doc. 1, p. 9). Plaintiff was seen by Lisa Arnold, a Physician Assistant, who told Plaintiff that there was nothing wrong with his cervical spine and lower back that she could see from the MRI report. *Id.* Plaintiff told Arnold that he was in great pain, that he could not bend over to put his socks and shoes on without being in pain, that laying down hurt, and that the sharp pain radiates down his right leg. *Id.* Arnold said that she was going to order an X-ray and talk to the neurosurgeon to see what he wanted to do and then notify Plaintiff. *Id.* Arnold did not examine Plaintiff and he was not examined by anyone at the Brain and Spine Institute. *Id.* Plaintiff has also not seen or spoken to a neurosurgeon about his conditions. *Id.* "As a result, Plaintiff has suffered and continues to suffer from excruciating back pain which renders him immobile, unable to stand straight up," and unable to sleep well. *Id.* This was caused by Arnold's and Fleming's neglect and disregard for Plaintiff's medical problems. *Id.*

On March 15, 2017, Plaintiff saw Dr. Trost and told him that he was having sharp pain in his lower back that radiates up and down his right leg, making it difficult for him to walk at times. *Id.* He also told Trost that the sharp pain in his neck was causing a very painful headache that would sometimes last for two to three days. *Id.* Plaintiff explained to Trost that he received epidural steroid injections at the UIC Hospital before being transferred to Menard from Stateville, and that he had not received one since May 6, 2016. *Id.* He told Trost that the neurosurgeon at the UIC recommended that he return to the pain clinic to discuss surgical options if his pain progressed and he no longer found relief in the injections. *Id.* Plaintiff informed Trost hat Barks and Slavin thought he would benefit from surgical decompression. *Id.*

Trost responded by saying that "he runs the health care down here and he don't care what the UIC recommended or what any doctor said down there, he don't see anything wrong with [Plaintiff] and they won't do any epidural injection in Menard and he is not going to recommend anything." *Id.*

On April 11, 2017, Plaintiff saw Dr. Moldenhauer regarding his back and neck pain and reported to him that the sharp pain in his back was hurting to the point where he could not sleep. *Id.* He also told him that he did not have anything for the pain. *Id.* Plaintiff explained that his past treatment and recommendations from the UIC that included epidural injections. (Doc. 1, p. 10). Moldenhauer told Plaintiff that he "didn't care about what the neurosurgeon said or about the injections because they do not give any injections at Menard plus Dr. Fleming and Lisa Arnold . . . said there was nothing wrong with [Plaintiff] and no surgical procedure was needed." *Id.* Moldenhauer also told Plaintiff that the "only thing [he] will get is some Tylenols." *Id.*

On April 16, 2017, Plaintiff was seen by sick call for back pain. *Id.* On April 21, 2017, Plaintiff was seen by Moldenhauer regarding his back and neck pain. *Id.* He told Moldenhauer that "the pain and discomfort became so severe that he could not sit on the toilet to use the stool." *Id.* Moldenhauer told Plaintiff that he would give him some Motrin but "to stop wasting his time," and said that "if [Plaintiff] liked the treatment at the UIC so much, to transfer back down there because [he would] not get any injections or surgical procedure down here at Menard." *Id.* On April 26, 2017, Plaintiff submitted several grievances complaining about his inadequate treatment. *Id.* His institutional grievance was denied. *Id.*

Plaintiff filed a grievance with the ARB on May 19, 2017. He received a response from the ARB on August 2, 2017 in which Debbie Knauer wrote that "Plaintiff was seen by outside doctor on March 2016, the actual treatment ordered must be done by attending physician and is

not within jurisdiction of this office." *Id.* "Knauer did not review Plaintiff's grievance thoroughly, nor did she investigate any issues" presented in the grievance. *Id.* The "unprofessional" decision she reached has caused Plaintiff "to continue to suffer in excruciating pain, severe discomfort and serious deterioration" due to the denial of medical treatment. *Id.*

Plaintiff "continues to suffer in pain and discomfort from lower back pain and cervical canal stenosis with no relief in sight." (Doc. 1, p. 11). He requests monetary damages and "proper medical treatment as well as continuing treatment with Dr. Engelhard with epidural steroid injections." (Doc. 1, p. 12).

## **Discussion**

Before analyzing Plaintiff's allegations, the Court finds it appropriate to address the fact that Plaintiff named two individuals as defendants that do not appear to be amenable to suit under § 1983. In his list of defendants, Plaintiff claims that Dr. Fleming was a neurosurgeon and that Lisa Arnold was a physician assistant at Memorial Hospital of Carbondale during the relevant period. The Complaint does not allege that Memorial Hospital of Carbondale or any of its doctors had a contractual relationship with Menard, Stateville or the Illinois Department of Corrections to provide medical care to prisoners. Whether or not Memorial Hospital (or any private physician) can be considered a "state actor" is a key factor in determining whether Plaintiff can maintain a constitutional claim for deliberate indifference to a medical/mental health condition against such a defendant because a plaintiff cannot proceed with a federal claim under § 1983 against a non-state actor. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 822-30 (7th Cir. 2009); *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999); *Gayman v. Principal Fin. Servs., Inc.*, 311 F.3d 851, 852-53 (7th Cir. 2003). A mere referral of a prisoner for treatment by an outside medical provider does not transform such a provider into a

state actor that may be sued under § 1983 – more is required. Plaintiff does not allege that such a contractual relationship existed here. Accordingly, Arnold and Fleming will be dismissed from this action without prejudice.

Moving to the allegations of the Complaint, the Court finds it convenient to organize the *pro se* action into a single count. The parties and the Court will use this designation in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of this count does not constitute an opinion regarding its merit.

**Count 1 –** Defendants showed deliberate indifference to Plaintiff's serious medical need involving his cervical spine and severe back, neck, and arm pain in violation of the Eighth Amendment.

As discussed in more detail below, Count 1 will be allowed to proceed past threshold. Any other intended claim that has not been recognized by the Court is considered dismissed without prejudice as inadequately pleaded under the *Twombly* pleading standard.

**Count 1**

The Eighth Amendment protects prisoners from cruel and unusual punishment. *See Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (*per curiam*). To state a claim, an inmate must show that: (1) he suffered from an objectively serious medical need; and (2) state officials acted with deliberate indifference to the prisoner's medical need, which is a subjective standard. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001).

Plaintiff has satisfied both of these standards with respect to his claims against Trost, Moldenhauer and Knauer. Count 1 will therefore proceed against them. As previously noted,

Arnold and Fleming will be dismissed from this action without prejudice as they do not appear to be state actors amenable to suit under § 1983.

**Disposition**

**IT IS HEREBY ORDERED** that **COUNT 1** shall **PROCEED** against **TROST**, **MOLDENHAUER**, and **KNAUER**.

**IT IS FURTHER ORDERED** that **COUNT** 1 shall be **DISMISSED** as against **ARNOLD** and **FLEMING**, and these defendants shall be **DISMISSED** without prejudice from this action for the reasons stated herein.

**IT IS FURTHER ORDERED** that as to **COUNT 1**, the Clerk of Court shall prepare for **TROST**, **MOLDENHAUER**, and **KNAUER**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Plaintiff. If any defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Reona J. Daly for further pre-trial proceedings. Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Reona J. Daly for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, despite the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: December 1, 2017**

**s/ STACI M. YANDLE**
**U.S. District Judge**